NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-165

STATE OF LOUISIANA

VERSUS

LIONEL PAUL DUGAS

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 07-1638
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

************

PHYLLIS M. KEATY
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Phyllis M. Keaty, Judges.


**Amy, J., dissents and would affirm the defendant's conviction and sentence.**

CONDITIONALLY AFFIRMED,
REMANDED WITH INSTRUCTIONS.


J. Phil Haney
District Attorney
Angela B. Odinet
Assistant District Attorney
300 Iberia Street, Suite 200
New Iberia, Louisiana 70560
(337) 369-4420
Counsel for Appellee:
	State of Louisiana

**G. Paul Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana  70598**
**(337) 237-2537**
**Counsel for Defendant/Appellant:**
       **Lionel Paul Dugas**

**Beth Smith Fontenot**
**Louisiana Appellate Project**
**Post Office Box 3183**
**Lake Charles, Louisiana  70602**
**(337) 491-3864**
**Counsel for Defendant/Appellant:**
       **Lionel Paul Dugas**

**Lionel Paul Dugas, #297292**
**In Proper Person**
**Richwood Correctional Center**
**180 Pine Bayou Circle**
**Monroe, Louisiana  71202**
**Defendant**

**KEATY, Judge.**

## FACTS AND PROCEDURAL HISTORY

On June 27, 2007, Defendant, Lionel Paul Dugas, cashed three fake checks at Menard Brothers Grocery made out to him. He pled guilty to forgery in trial court docket number 07-1638, which is before this court in the instant suit at docket number 11-165. As part of the plea agreement, Defendant agreed to also plead guilty to illegal possession of stolen things with a value over $500, a violation of La.R.S. 14:69 in trial court docket number 07-2346, which is before this court in appellate docket number 11-167, and unauthorized use of a motor vehicle in trial court docket number 09-2265, which is before this court in appellate docket number 11-169. The plea agreement between the State and Defendant included a provision that Defendant was "to plead as a second felony offender on a multiple offender bill of information."

On January 8, 2010, Defendant entered a best interest plea to forgery, and charges of monetary instrument abuse and theft over $500 were dismissed. In accordance with a plea agreement, Defendant was sentenced to ten years at hard labor.

On January 12, 2010, the State filed a habitual offender bill, and the habitual offender proceeding was held January 14, 2010. At the start of the proceeding, the State indicated that pursuant to the plea agreement, it was filing a habitual offender bill charging Defendant with being a second felony offender and that he would be sentenced in accordance with the plea agreement to ten years. The following colloquy occurred:

BY THE COURT:

Okay. So his original plea agreement was ten years?

BY MR. ODINET:

Yes, sir.

BY THE COURT:

Hard labor.

BY MR. ODINET:

Yes, sir.

BY THE COURT:

And the agreement is that under the multiple bill he will receive the same sentence?

BY MR. ODINET:

Correct, Your Honor.

BY THE COURT:

Ten years hard labor.

BY MR. ODINET:

Ten years hard labor, correct.

BY THE COURT:

All right.

BY MR. MONTEGUT:

For the record, it is one ten-year sentence is what he agreed to.

Defendant then entered a plea of guilty. At that time, the trial court stated the following:

Q. All right. It's my understanding that you have entered into a plea agreement which you have agreed to plead to this second or subsequent offense giving your prior offense of the Unauthorized Entry and this offense of Forgery and that exchange for that plea the Court's going to sentence you to ten years at hard labor, credit for time served. That's going to be your actual sentence. So is, is that your understanding of what's going to happen if you plead guilty to this second or subsequent offense?

2

A. It makes me an [sic] multi offender?

Q. Yes.

A. And my time run flat.

Q. And your time's going to be ten years.

A. Yes, sir.

Q. The same as you were given previously, okay?

A. Yes, sir.

The trial court subsequently sentenced Defendant, stating the following: "In accordance with your plea agreement, I sentence you on this Bill of Information to ten years at hard labor, credit for time served."

Defendant appealed his habitual offender sentence. Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967) in this matter, as well as in appellate docket numbers 11-167 and 11-169, alleging that the record did not contain any errors that would support a reversal of Defendant's conviction and sentence in this matter. Defendant filed a pro se brief asserting that his habitual offender plea was not voluntary and that the trial court had erred in its failure to read him his rights at the habitual offender hearing. This court denied appellate counsel's motion to withdraw and ordered counsel to brief the following issues: 1) the voluntariness of Defendant's habitual offender plea, and 2) the trial court's failure to inform Defendant of his rights to remain silent, a hearing, and to have the State prove its case at his habitual offender proceeding where Defendant admitted his status as a second felony offender. *State v. Dugas*, an unpublished opinion bearing docket number 11-165 (La.App. 3 Cir. 10/12/11), 2011 WL 4808205. Appellate counsel filed a brief addressing those issues and, for the

3

following reasons, we conditionally affirm Defendant's adjudication and sentence, but we remand the case to the trial court with instructions.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent which has been briefed by appellate counsel. The trial court failed to inform Defendant of his rights to remain silent, a hearing, and to have the State prove its case at his habitual offender proceeding, and Defendant admitted his status as a second felony offender. Defendant's counsel contends his admission should be considered involuntary and the habitual offender sentence vacated. Defendant requests this court remand the case for Defendant to have the opportunity to plead anew or withdraw his plea and proceed to trial. If Defendant desires to continue his plea, he requests this court order a new habitual offender hearing at which Defendant should be advised of his rights prior to any admission of his habitual offender status.

The State contends that the error in failing to apprise Defendant of his rights is harmless because Defendant was made aware of his right to remain silent and to a trial at his guilty plea proceeding held six days prior to his habitual offender proceeding, and he made a knowing plea. The State cites no authority in support of its reliance on the advice of rights at the guilty plea proceeding. The State additionally notes it introduced evidence of his underlying crimes, and Defendant did not object.

Defendant pled guilty to three offenses on January 8, 2010. The written plea agreement between the State and Defendant included a provision that Defendant

4

was "to plead as a second felony offender on a multiple offender bill of information."

In "support of the habitual offender bill," the prosecutor stated he was "going to file" certified copies of the charging instrument, minutes, and transcript from Defendant's 2002 conviction.[1] The trial court then informed Defendant that a multiple offender bill had been filed against him, alleging that he had 2002 convictions for issuing worthless checks, unauthorized entry of a dwelling, and possession of Diazepam, offenses to which he had pled guilty. Defendant affirmed that he understood that he had those convictions, and he further indicated that he remembered having pled guilty to the crime of forgery in 2010. Defendant was informed of the penalty range he faced as a second felony offender for forgery and of the sentence he was to receive as a result of his guilty plea to the habitual offender bill. The trial court determined that Defendant had not been threatened and no promises other than what was outlined in the plea agreement had been made. The State then listed the offenses contained in the habitual offender bill, and Defendant affirmed that that was his "understanding of what's happened." Defendant subsequently pled guilty, and the trial court accepted the plea.

In *State v. Harris*, 95-900, pp. 1-2 (La. 5/19/95), 654 So.2d 680, 680, the supreme court held:

> Admissions of identity at a multiple offender hearing implicate the defendant's Fifth Amendment privilege against self-incrimination. *State v. Johnson*, 432 So.2d 815 (La.1983). Nevertheless, multiple offender proceedings "simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt

---

[1]There is no indication in the transcript that these documents were received in evidence. In response to an information request for exhibits introduced at the January 14, 2010 habitual offender proceeding, the trial court forwarded documents regarding Defendant's prior convictions, including those referenced by the prosecutor. We note there is no indication on the documents that they were filed in evidence at the January 14, 2010 habitual offender hearing.

or innocence." *State v. Martin*, 427 So.2d 1182, 1185 (La.1983). This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the *Boykin* colloquy which must accompany a valid plea of guilty. *Id.*, 427 So.2d at 1185, n. 7. In the absence of any allegation or showing that the admission was involuntary, *compare State v. Johnson, supra*, the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law. *See Holloway v. Lynaugh*, 838 F.2d 792 (5th Cir.), cert. denied, 488 U.S. 838, 109 S.Ct. 104, 102 L.Ed.2d 80 (1988); *State v. Firmin*, 522 So.2d 1181 (La.App. 4th Cir.), writ denied, 532 So.2d 759 (La.1988).

In this case, the prosecution introduced and filed into evidence a sworn affidavit from the Department of Corrections to prove that petitioner, Roy Harris, was the same person who was previously convicted of the predicate felonies which led to the multiple bill. Defense counsel made his stipulation in open court and in the presence of the petitioner. A complete review of the transcript reveals that the petitioner was given a fundamentally fair hearing wherein the state proved the prior felony convictions.

In *State v. Boutte*, 09-404, pp. 1-6 (La.App. 3 Cir. 1/13/10), 27 So.3d 1111, 1112-15, this court discussed two cases involving admissions to habitual offender status made as part of a plea agreement:

> In *State v. Fletcher*, 00-968, pp. 3-4 (La.App. 3 Cir. 12/6/00), 776 So.2d 1240, 1243, *writ denied*, 01-342 (La.12/14/01), 803 So.2d 986, this court, addressing an assigned error, discussed the pertinent case law on this issue:
>
> > While La. R.S. 15:529.1 does not specifically address the issue of a defendant's right to remain silent, in *State v. Johnson*, 432 So.2d 815 (La.1983), *writ granted on other grounds*, 438 So.2d 1113 (La.1983), *appeal after remand*, 457 So.2d 1251 (La.App. 1 Cir.1984), *appeal after remand*, 471 So.2d 1041 (La.App. 1 Cir.1985), the supreme court concluded that the statute clearly recognizes that a defendant has the right to remain silent and thus implicitly provides that a defendant should be advised by the trial court of this right before he acknowledges or confesses his status as an habitual offender. Thus, the trial court erred in failing to advise the defendant of this right before accepting his admission that he was the person who was convicted of the predicate offenses. The question is whether or not this is harmless error.

6

. . . .

In *Fletcher*, the defendant agreed to plead guilty to two unrelated charges in exchange for concurrent sentences with the habitual offender sentence. On appeal, he challenged his habitual offender adjudication and sentence on the ground that the trial court failed to advise him of his right to remain silent. The defendant admitted to identity and the state did not introduce any evidence to prove identity. However, relying on *Harris* and *State v. Payne*, 94-1628 (La.App. 3 Cir. 5/22/96), 677 So.2d 527, this court found the defendant's hearing was fundamentally fair, thus, the error lacked merit. The facts of *Fletcher* reflected that the trial court advised the defendant of his right to a hearing for the State to prove its case, and the defendant waived the hearing.

In *Payne*, this court reached the conclusion that a proceeding was fundamentally fair even though the defendant was not advised of his right to remain silent in a habitual offender adjudication and despite the fact that the only evidence of his multiple offender status was his own admission. In doing so, the court made the following statement:

> There have been no allegations or showing that the admission was involuntary. Defendant was represented by counsel at the hearing, he was informed of the allegations in the multiple offender bill and he was advised of his right to a hearing wherein the state would have the burden of proving he was the same person previously convicted of the predicate offense. Furthermore, the admission was part of a plea agreement and defendant was fully apprised of the sentence he was to receive.

*Id*. at 530.

The court in *Payne* referred to the *Harris* decision and concluded that the proceedings were fundamentally fair and met due process standards. In *Payne*, the defendant was advised by the trial court he had the right to a hearing, and the right for an attorney to represent him at the hearing. Additionally, the trial court advised the defendant, "You have a right to have the state come and prove that you are the same George Payne that had the other convictions," and "[i]f you plead guilty and accept this at this time, then you're waiving the right to that particular hearing, which would be with all due process and all the rest." *Id*. at 529.

7

The facts of *Fletcher* and *Payne* differ from the present case in that Defendants in those cases were apprised of their rights to a hearing and to have the State prove its case. Additionally, unlike *Harris*, in the present case, there was no independent evidence introduced or testimony presented to establish Defendant's identity.

This error patent requires that a new habitual offender hearing be held at which Defendant must be apprised of his rights prior to any admission of his status as a habitual offender unless the trial court finds Defendant's guilty plea to the habitual offender bill was involuntary and Defendant chooses to withdraw his guilty plea, rendering this error moot.

## ASSIGNMENT OF ERROR NO. 1
## AND *PRO SE* ASSIGNMENTS OF ERROR

In his first assignment of error, Defendant contends that the trial court failed to assure that Defendant entered a knowing and voluntary guilty plea by misinforming him that he would receive the same sentence for the second habitual offender offense as he had received for the underlying forgery offense.

At the time Defendant entered his plea of guilty to the underlying offense, the trial court stated: "You're going to plead guilty to these three charges. You're going to get ten years on each, credit for time served, all concurrent. But the District Attorney is reserving the right to bill you as a second felony offender on a multiple offender bill." Defendant indicated he understood. The trial court told Defendant he would receive the "same sentence" if he was adjudicated a second felony offender. The trial court then stated: "[Y]ou're going to have ten years to serve all concurrent." Defendant was subsequently sentenced to serve ten years at hard labor.

8

Defendant contends the habitual offender sentence imposed by the trial court was not the "same sentence" as that originally imposed for the underlying offense of forgery. Defendant asserts the sentence imposed for the underlying offense of forgery had no restrictions on probation or suspension of sentence, and it appeared that he was eligible for diminution of sentence for good behavior. La.R.S. 14:72. However, when Defendant was sentenced as a habitual offender, he was no longer eligible for probation, suspension of sentence, or diminution of sentence for good behavior. La.R.S. 15:529.1(G) and La.R.S. 15:571.3(C)(1).

Defendant contends that because his sentence for the underlying offense of forgery was not a probated or suspended sentence, his ineligibility for a probated or suspended sentence as a habitual offender did not deviate from the agreement that he would receive the "same sentence" as a habitual offender. However, his ineligibility for diminution of sentence as a habitual offender deviated from the plea agreement because he would no longer receive the "same sentence" as that imposed for the underlying offense of forgery. Because Defendant was no longer eligible for diminution of sentence for good behavior as a habitual offender, he asserts his maximum penalty exposure is longer than his exposure for the underlying offense of forgery; thus, it was not in accordance with the original plea agreement that he would receive the "same sentence." Defendant consequently requests that the matter be remanded for a hearing at which he should be allowed to either plead anew or withdraw his plea and proceed to trial if he so desires.[2]

---

[2]This court ordered briefing regarding the voluntary nature of the multiple offender plea. *Dugas*, 2011 WL 4808205. In response, appellate counsel asks that the matter be remanded for a hearing at which Defendant should be allowed to either plead anew or withdraw his plea. She does not specify whether Defendant should be given the opportunity to withdraw his guilty plea to the underlying offense, the multiple offender bill, or both. In his *pro se* brief, Defendant asserts the trial court erred in accepting the guilty plea under the multiple offender statute.

(continued . . .)

In support of his claims, Defendant cites *State ex rel. Miles v. State*, 02-1843, p. 1 (La. 9/5/03), 855 So.2d 732, 732, in which the supreme court held:

> The district court is ordered to appoint counsel for relator and to hold a hearing at which it will determine whether misinformation with regard to relator's eligibility for diminution of sentence pursuant to La.R.S. 15:571.3 ("good time") constituted a material inducement for his guilty plea to armed robbery which precluded relator from entering a knowing and voluntary guilty plea "with eyes open," *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), and entitles him to withdraw that plea. *See State ex rel. Aleman v. State*, 99-0488 (La.10/1/99), 745 So.2d 602.

Defendant also cites *State ex rel. Gilliam*, 00-2012, p. 1 (La. 3/30/01), 788 So.2d 436, 436, in which the supreme court held:

> The district court is ordered to appoint counsel and hold a hearing at which it will allow relator to withdraw his guilty plea if he persists in that desire. The record below supports relator's claim that misinformation with regard to his eligibility for diminution of sentence pursuant to R.S. 15:571.3 ("good time") precluded him from making his decision to waive trial and enter his pleas "with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942); see *State ex rel. Aleman v. State*, 99-1180 (La.10/1/99), 745 So.2d 602; *State ex rel. Brown v. State*, 93-1701 (La.3/8/96), 668 So.2d 1148; *State v. Scott*, 93-0401 (La.3/17/95), 651 So.2d 1344.

The State contends that Defendant received the "same sentence." The State avers there is no constitutional right to "good time." It cites *Simon v. Stalder*, an unpublished opinion bearing docket number 08-930 (La.App. 1 Cir. 10/31/08), 2008 WL 4763512, in support of its claim. In that case, Simon filed a writ of habeas corpus asserting the Department of Public Safety and Corrections' application of the 1995 amendment to La.R.S. 15:571.4 to his accumulation of

---

(. . . continued)

Additionally, the State limits its argument to the multiple offender plea. Accordingly, we have limited our discussion to the multiple offender plea.

good time credit constituted an unconstitutional *ex post facto* law and impairment of the obligation of contracts; therefore, he was entitled to immediate release.[3]

In its ruling, the *Simon* court agreed with the commissioner's screening report which stated:

> [T]here is no constitutional right to good time. The Petitioner, upon conviction, has only the right to be eligible for good time if authorized for such by the legislature. The amount of good time for which he is eligible is set by the legislature in R.S. 15:571.3. However, the amount of good time that may be forfeited for disciplinary violations is within the discretion of the Department, subject to the maximum limits set by the legislature. Neither the earning nor the forfeiture of good time is guaranteed either by statute or DOC rule. And neither does the possibility of forfeiture of good time for misconduct "increase" the penalty-the 20-year sentence imposed for rape in this instance. Thus, the argument that the increased forfeiture of good time, applied only to prospective misconduct, is somehow additional punishment for the Petitioner's original crime of rape is without any basis in the law.

*Id.* at 5 (citation omitted).

The State also cites *State v. Singleton*, 96-203, p. 7 (La.App. 5 Cir. 8/28/96), 680 So.2d 88, 92, *writ granted in part*, *denied in part*, 96-2380 (La. 2/7/97), 688 So.2d 486, in which the fifth circuit stated: "Good time credit is not guaranteed, but is earned through good behavior in prison."

The State noted that in *Simon*, 2008 WL 4763512, the court determined the earning of good time was not guaranteed. Further, that court determined that the possibility of forfeiture of good time for misconduct did not increase the penalty imposed.

The State contends that Defendant argues he is subject to a longer sentence because he does not have the potential for eligibility for diminution of sentence as a habitual offender, and this argument is without merit. It also contends there was

---

[3]Louisiana Revised Statutes 15:571.1 addresses the forfeiture of diminution of sentence.

11

no guarantee Defendant would have received diminution of sentence for the underlying offense of forgery; therefore, to argue he received a longer sentence as a habitual offender is premature and argumentative. The State points out that, at sentencing, Defendant was not promised or guaranteed diminution of sentence for good behavior. The State further asserts Defendant's argument is analogous to that in *Simon*, in which the first circuit found the possibility of forfeiture of good time did not increase the penalty for the sentence imposed. The State concludes that Defendant was not guaranteed good time; therefore, he was not deprived of anything when he entered a guilty plea to the habitual offender charge.

A sentence imposed for forgery is subject to diminution of sentence for good behavior. La.R.S. 14:72 and La.R.S. 15:571.3. However, as a habitual offender, Defendant is ineligible for diminution of sentence for good behavior. La.R.S. 15:571.3.

At the time that Defendant was sentenced, La.R.S. 15:571.3 (footnote omitted) provided, in pertinent part[4]:

> C. Diminution of sentence shall not be allowed an inmate in the custody of the Department of Public Safety and Corrections if:
>
> (1) The inmate has been convicted one or more times under the laws of this state of any one or more of the following crimes:
>
> . . . .
>
> (s) A violation of the Louisiana Controlled Dangerous Substances Law which is a felony; . . .
>
> (t) . . . and

---

[4]La.R.S. 15:571.3(C) was amended by the legislature in 2011. The new provisions are only applicable to those sentenced on or after August 15, 2011. 2011 La. H.B. 414 (NS), 6/24/11.

(2) The inmate has been sentenced as an habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1, and

(3) The inmate's last conviction for the purposes of the Habitual Offender Law, was for a crime: (a) Committed during the period beginning September 16, 1975 through September 9, 1977, inclusive of both dates, and the sentence of the court specifically denies eligibility for diminution of sentence, or (b) committed on or after September 10, 1977.

The requirements of all three subsections of La.R.S. 15:571.3 C must be present in order to deny an inmate the opportunity to earn good time. Atty.Gen.Op. No. 92-577; *see also State v. Mosby*, 581 So.2d 1060, 1068 (La.App. 1 Cir.1991), *affirmed*, 595 So.2d 1135 (1992). The use of the conjunction "and" between each subsection makes each element essential. *See* La.C.C.P. art. 5056. Each prerequisite must be fulfilled and each condition must be met for the statute to become effective.

In addition, to fulfill the element in La.R.S. 15:571.3 C(1), a prior conviction, as well as the instant conviction, may be used. Atty.Gen.Op. No. 92-577; *State v. Melancon*, 536 So.2d 430, 434 (La.App. 4 Cir.1988), *writ denied*, 582 So.2d 860 (1991).

*Spellman v. Stalder*, 98-725, p. 4 (La.App. 1 Cir. 4/1/99), 740 So.2d 671, 674, *writ granted and supplementation ordered*, 99-1801 (La. 10/8/99), 750 So.2d 172, (footnote omitted).

Defendant previously pled guilty to possession with intent to distribute Diazepam, a felony violation of the controlled dangerous substance law.[5] La.R.S. 40:964; La.R.S. 40:969. Further, Defendant was adjudicated a second offender based on the underlying guilty plea related to the controlled dangerous substance and the instant guilty plea for forgery. All three subsections of La.R.S. 15:571.3(C) have been satisfied; thus, Defendant is not entitled to diminution of sentence for good behavior as a habitual offender. However, he would have been eligible for diminution of sentence for good behavior on the underlying conviction

---

[5]Defendant also had prior convictions for issuing worthless checks and unauthorized entry of a dwelling.

13

of forgery alone, as he had not been convicted of a second crime of violence or denied eligibility because he was a sex offender. La.R.S. 15:571.3(B).

Defendant was told by the trial court that he would receive the "same sentence" as a habitual offender that had been imposed for forgery. Defendant was sentenced to the same number of years for both offenses, but the sentences are not the same. As a habitual offender, Defendant is not entitled to diminution of sentence for good behavior. Therefore, the trial court is ordered to appoint counsel for Defendant and to hold a hearing at which the trial court will determine whether Defendant's eligibility for diminution of sentence affected the knowing and voluntary entry of his guilty plea to the habitual offender bill and entitles him to withdraw that plea.

## OTHER *PRO SE* ASSIGNMENTS OF ERROR

In his *pro* se brief, Defendant makes several claims. He contends it was his understanding that he would not be charged as a habitual offender.

Defendant also makes claims of double jeopardy as follows:

> [T]he defendant pled to three charges, he would get (10) years after the plea was taken the Dist[rict] attorney dismissed the same two charges in the plea in the sentencing. And with[h]eld the charge of Forgery 14:72[.] The sentence and punishment is in fact double jeopardy C.Cr.P. 591 Pursuant to criminal code of procedure.

He additionally states:

> Since the Monetary Instrument Abuse . . .; Theft . . ., charges was [sic] dismissed as the result of a plea bargain, it could not be resurrected against defendant. The (D.A.) had plain error on [the] record in open court, of the plea and arise from the same incident would result [i]n a greater penalty than the concurrent sentence twice in jeopardy[.]

Defendant further contends his sentence is excessive.

14

*Habitual Offender*

At the time Defendant entered his plea of guilty to forgery, the trial court clearly informed him that the State reserved the right to bill him as a habitual offender. Additionally, the "CERTIFICATE OUTLINING FELONY PLEA AGREEMENT" found in the record indicates that, as part of his plea to the underlying offense of forgery, Defendant agreed to plead guilty to the habitual offender bill.

*Double Jeopardy*

We cannot interpret Defendant's claim of double jeopardy, and he fails to reference pertinent pages in the record in support of that claim; thus, the claim will not be addressed by this court. Uniform Rules—Courts of Appeal, Rule 2-12.4.

*Excessive Sentence*

Defendant's excessive sentence claim is moot in light of the remand of this matter to the trial court for an evidentiary hearing.

**DECREE**

For the above reasons, Defendant's conviction and sentence for forgery are conditionally affirmed. However, this case is remanded to the trial court with instructions that the trial court appoint counsel for Defendant and hold an evidentiary hearing to determine whether Defendant's eligibility for diminution of sentence affected the knowing and voluntary entry of his guilty plea to the habitual offender bill and entitles him to withdraw that plea.

If the trial court determines Defendant's plea was voluntary, the trial court is ordered to vacate Defendant's habitual offender adjudication and sentence and hold a new habitual offender hearing at which Defendant should be apprised of his

rights to a hearing, to have the State prove its case, and of his right to remain silent prior to any admission of habitual offender status.

If the trial court determines Defendant's plea was involuntary and Defendant chooses to withdraw his guilty plea, the error concerning the failure to advise Defendant of his rights at his habitual offender proceeding is moot. If Defendant does not withdraw his guilty plea, the trial court is ordered to vacate Defendant's habitual offender adjudication and sentence and hold a new habitual offender hearing at which Defendant should be apprised of his rights to a hearing, to have the State prove its case, and of his right to remain silent prior to any admission of habitual offender status.

Defendant may appeal from any adverse ruling on the issue of the voluntariness of his plea to the habitual offender bill of information. In the absence of any such appeal, this court affirms Defendant's conviction and sentence.

**CONDITIONALLY AFFIRMED, REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.